1
2
3
4

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

5
6
7
8
9
10

| | | |
|---|---|---|
| CHRISTOPHER ARMONDO TORTU, | ) | 2:03-CV-0783-RCJ-LRL |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| LAS VEGAS METROPOLITAN POLICE | ) | |
| DEPARTMENT, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

11      This matter coming before the Court on Defendants' Motion for Judgment as a Matter

12  of Law; in the Alternative, Motion for a New Trial (#124), Plaintiff's Motion for Attorney's

13  Fees (#127), Defendants' Counter-Motion for Attorney's Fees (#135), and Plaintiff's Motion

14  to Strike Defendants' Motion for Attorney's Fees (#133).  The Court has considered the

15  Motions, the pleadings on file, and oral argument on behalf of all parties.

16      IT IS HEREBY ORDERED that Defendants' Motion for Judgment as a Matter of

17  Law; in the Alternative, Motion for a New Trial (#124) is *granted*.

18      IT IS ALSO HEREBY ORDERED that Plaintiff's Motion for Attorney's Fees (#127)

19  is *denied* as moot.

20      IT IS ALSO HEREBY ORDERED that Plaintiff's Motion to Strike Defendants'

21  Motion for Attorney's Fees (#133) is *granted.*

22      IT IS ALSO HEREBY ORDERED that Defendants' Counter-Motion for Attorney's

23  Fees (#135) is *denied*.

24
25

**BACKGROUND**

Plaintiff Tortu filed a Complaint (#1) alleging several state, federal, and constitutional causes of action arising from a July 9, 2001, incident in which officers of the Las Vegas Metropolitan Police Department arrested Plaintiff at McCarran International Airport. Plaintiff contends that the police officers beat him for no reason.  The officers claim that Plaintiff was combative, refused to cooperate, and assaulted the officers.  The Court dismissed all claims except Plaintiff's cause of action for excessive use of force under 42 U.S.C. § 1983 and the Fourth Amendment against Officer Richard Cashton, Officer Eugene L. Engle, and Officer Duane Cowley in their individual capacities.  Plaintiff and Defendants agree that, on July 9, 2001, Plaintiff unlawfully boarded an airplane at McCarran International Airport without a ticket.  The Court previously ruled that the officers had sufficient grounds to arrest Plaintiff.  The sole remaining issue for trial was whether Officers Cashton, Engle, or Cowley used unreasonable force to effectuate the arrest.  Plaintiff and Defendants tell widely divergent stories concerning the circumstances of the arrest.

I.  **Plaintiff's Version of the Events**

At trial, Plaintiff claimed that he and his traveling companion purchased tickets with cash to board the Southwest Airlines flight in question on July 9, 2001.  Before obtaining boarding passes, Plaintiff misplaced the tickets while playing a video gambling game in the airport terminal.  According to Plaintiff, a Southwest employee informed him that the tickets had surfaced at the security checkpoint, and Plaintiff sent his traveling companion to retrieve them.  In the mean time, Southwest employees would not allow Plaintiff to board the plane.  Plaintiff claims that he saw the airline employees allow another passenger on the plane

without a boarding pass, and thus he followed them down the jetway and onto the plane, where he took an aisle seat towards the front of the plane.  Plaintiff claimed at trial that he refused to leave the plane until the police were called.  When the police arrived, Plaintiff obeyed their request to leave the plane.  Plaintiff claimed that he was upset with the Southwest employees, but his demeanor remained controlled as the officers escorted him back up the jetway to the terminal.  Once they reached the top of the jetway, Plaintiff testified that the officers told him to leave.  As he was walking away, Plaintiff claimed that he was talking on his cell phone, and may have yelled in the general direction of the Southwest employees, but he testified that he never used profanity.  Plaintiff testified that he had one beer before the incident, and that he was not drunk.

Plaintiff then testified that he was unexpectedly jumped from behind by at least three officers.  He stated that they immediately took him to the ground and handcuffed him.  Plaintiff testified that he did not resist.  After the officers secured the handcuffs, Plaintiff claimed that they continued to beat him with punches, kicks, and knee strikes while he lay on the ground.

Plaintiff then testified that the officers picked him up off the ground and escorted him through the terminal back to the jetway.  He stated that the officers pushed his face up against the wall as they unlocked the jetway door.  Then, Defendants pushed Plaintiff back and forth while they escorted him down the jetway.  At the bottom of the jetway, Plaintiff testified that the Defendants lifted him up and placed his feet in a luggage-sizer box.  While Plaintiff was handcuffed, standing in the luggage box, with his face held against the wall, all three officers again began to beat him incessantly in the back, ribs, and kidney areas.  Specifically, Plaintiff

testified that Officer Cashton was throwing numerous uppercut punches from behind Plaintiff as he stood in the luggage box, which punches passed through his legs and underneath his buttocks, striking him in the genitals.  Plaintiff testified that these punches caused Officer Cashton's injuries wherein the tendon connecting his chest muscle to his shoulder detached from the bone and his rotator cuff tore.

Plaintiff testified that the officers then lifted him out of the luggage box and took him outdoors down the stairs to the tarmac.  At that point, Plaintiff testified that the officers laid him face down on the tarmac surface.  While Plaintiff was on the ground, Officer Engle picked up Plaintiff's head to show him abrasions on his knuckles, and then punched Plaintiff in the back of the head.  According to Plaintiff, the officers then threw him over the hood of the police vehicle and began delivering several blows to his lower back and kidneys.  After this beating, Plaintiff testified that the officers placed him in the back middle seat of the patrol vehicle.  Plaintiff claimed that Officer Engle then came around to the open driver's door, and from a standing position outside the car, leaned over and inserted his arm between the front seats.  Officer Engle then reached between Plaintiff's legs and squeezed his testicles.

At trial, Plaintiff testified that the officers then took him to the airport police substation, where he was processed before being taken to the Clark County Detention Center.  Plaintiff stated that the officers continued to treat him roughly while he was at the substation.

## II.   <u>Defendants' Version of the Events</u>

As presented at trial, Defendants' version of the events surrounding Plaintiff's arrest on July 9, 2001, is quite different from Plaintiff's.  Defendants claim that, while on the plane,

Plaintiff stated that he refused to leave until the police arrived and arrested him.  When the police arrived and escorted Plaintiff off the plane and up the jetway, Defendants claim that Plaintiff was loudly screaming profanity.  Defendants' testified that Plaintiff's unruly behavior continued once he left the jetway and entered the terminal.  They claimed that Plaintiff was yelling profanity at the Southwest employees as he was walking away from the gate.  Defendants testified that Plaintiff smelled of alcohol, and they thought he was drunk.

Defendants testified that as Plaintiff was walking away, they approached him and asked him several times to stop.  When he refused, the officers told him that they were going to arrest him.  Defendants testified at trial that when they tried to arrest him and secured one handcuff, Plaintiff became physically combative and resisted the arrest.  They claimed that Plaintiff, using his free hand, struck Officer Cowley in the face with a back fist, knocking off Officer Cowley's glasses, and then head-butted Officer Cowley in the face.  The officers then wrestled Plaintiff to the ground.  They testified that he was actively holding his arms underneath his body so the officers could not secure the handcuffs.  The officers finally restrained Plaintiff and secured the handcuffs, at which time they immediately lifted him up off the ground.  The Defendants testified that they did not deliver any punches, kicks, or knee strikes to subdue Plaintiff.

Defendants testified that they then escorted Plaintiff through the terminal and back onto the jetway.  Officers Engle and Cashton walked on either side of Plaintiff in the jetway, while Officer Cowley followed closely behind.  Defendants testified that Plaintiff again became violent as they walked down the jetway.  They claimed that Plaintiff, who is about 6'3" tall and weighed at least 220 lbs. at the time, body checked the much smaller Officer

Engle, who was walking on Plaintiff's right side, into the side of the jetway, which caused a laceration to Officer Engle's left hand, as well as bruises and abrasions to his right hand and knuckles. Defendants testified that while in the jetway, Plaintiff also quickly dipped his shoulder in an attempt to free himself from Officer Cashton's grip, who was on Plaintiff's left side, and then thrust backwards. Officer Cashton testified that this maneuver caused his right arm to stretch forward and then sharply backwards, as he tried to maintain control of Plaintiff, which movement resulted in the severe injuries to Officer Cashton's arm and shoulder. These injuries required subsequent surgery to reattach chest muscle tendons to his shoulder. Defendants testified that Officers Engle and Cowley, along with the help of a fourth officer, Officer Prator, regained control of Plaintiff and escorted him down the stairs to the tarmac outside. Defendants testified that they did not place Plaintiff in the luggage-sizer box, and did not throw any punches in the jetway, including any punches directed at Plaintiff's groin.

Defendants claimed that Plaintiff tried to insert his feet between the stairs as they escorted him out of the jetway and down the outdoor stairs, in an attempt to impede their progress. Once the officers escorted Plaintiff to the bottom of the stairs, they testified that they put him in the patrol car and took him to the substation. Defendants testified that (1) they never laid Plaintiff face down on the tarmac, (2) no officer punched Plaintiff in the back of the head, (3) Plaintiff was never thrown over the hood of the police vehicle and beaten, and (4) no officer reached through the driver's side and squeezed Plaintiff's testicles. Defendants testified that they transported Plaintiff to the substation, where they processed him and took some photographs before sending him to the Clark County Detention Center.

### III.   **Outcome at Trial**

On June 5, 2006, the jury rendered a verdict in this case.  The jury found that Officers Cashton and Cowley did not use unreasonable force.  However, the jury found that Officer Engle did use unreasonable force against Plaintiff.  The Court did not instruct the jury on Defendants' qualified immunity defense, and thus the jury only made a determination that Officer Engle acted unreasonably under the Fourth Amendment.  The Court indicated at trial that it would consider the qualified immunity defense, if necessary, after trial since it necessitates a legal determination.  The jury awarded Plaintiff $175,000 in compensatory damages and $5,000 in punitive damages.

## DISCUSSION

The Court finds that Defendant Engle is entitled to Judgment as a Matter of Law, or in the alternative, Defendant Engle is entitled to a new trial.  The reasons supporting this conclusion are set forth below.

### I.   **Judgment as a Matter of Law**

Defendant Officer Engle is entitled to Judgment as a Matter of Law because (1) the jury reached an unreasonable conclusion, and (2) Officer Engle is protected by qualified immunity in this case.

#### A.   **Legal Standard**

Rule 50 of the Federal Rules of Civil Procedure governs the entry of Judgment as a Matter of Law.  The Court may enter Judgment as a Matter of Law when "there is no legally sufficient evidentiary basis for a reasonable jury to find for [the non-moving party]."  Fed. R. Civ. P. 50(a)(1).  Judgment as a Matter of Law is appropriate when there is insufficient

1    evidence on record to support the jury's conclusion.  Cf. Pavao v. Pagay, 307 F.3d 915 (9th

2    Cir. 2002) (holding that district court properly denied motion for Judgment as a Matter of

3    Law because jury had sufficient evidence to support its conclusion); Santos v. Gates, 287

4    F.3d 846 (9th Cir. 2002) (holding that district court erred in granting Judgment as a Matter of

5    Law because there was sufficient evidence on record to establish unreasonable use of force).

6        **B.    Unreasonable Jury Conclusions**

7            Defendant Officer Engle is entitled to Judgment as a Matter of Law because the jury

8    reached an unreasonable and irrational conclusion at trial.  First, the jury reached an

9    inconsistent conclusion when it found Officer Engle liable, but did not find Officers Cashton

10   and Cowley liable.  Second, the jury acted unreasonably by reaching a conclusion

11   unsupported by the weight of the evidence on record.

12       1.    Inconsistent finding concerning the three Defendants

13           The jury reached an unreasonable conclusion when it found that Officer Engle

14   violated Plaintiff's Fourth Amendment rights, but Officers Cashton and Cowley did not.  At

15   trial, Plaintiff presented his case for unreasonable seizure by claiming that all three

16   Defendants beat him in concert throughout the night of July 9, 2001.  The evidence presented

17   by Plaintiff at trial generally accused all three Officers together, with a few instances of

18   specific allegations against an individual Officer.  Plaintiff testified that all three Officers

19   beat him (1) in the terminal when he was first handcuffed, (2) at the end of the jetway in the

20   luggage-sizer box, and (3) on the hood of the police vehicle at the base of the outdoor stairs

21   on the airport tarmac.  At trial, Plaintiff made no particular distinction between the force used

22   by the three Defendants during these occurrences.  Therefore, the jury did not have an

25                                Page 8 of  28

evidentiary basis to conclude that Officer Engle used unreasonable force in these three instances, while Officers Cashton and Cowley did not.

Plaintiff made no particularized allegations against Officer Cowley, but he did make such allegations against Officers Cashton and Engle. Plaintiff testified that while other officers were beating him in the back as he stood in the luggage-sizer box, Officer Cashton delivered several uppercut punches to Plaintiff's groin. Plaintiff also testified that Officer Engle punched Plaintiff in the back of the head while he lay on the ground at the base of the stairs, and Officer Engle squeezed Plaintiff's testicles when he was seated in the police vehicle. With respect to Officer Engle, the jury must have concluded that (1) he used unreasonable force when he punched Plaintiff in the head as he lay on the ground at the base of the stairs, (2) he used unreasonable force when he squeezed Plaintiff's testicles, or (3) he used unreasonable force in both instances. As will be shown below, however, the jury's verdict with respect to Officer Engle is unreasonable in light of the weight of evidence presented at trial as well as the jury's verdict with respect to the other Defendants.

2.     Jury went against the clear weight of the evidence

The evidence presented at trial did not support the jury's verdict. The jury unreasonably believed a small part of Plaintiff's story while rejecting the rest. The parties in this case present very different accounts of what happened on July 9, 2001. At trial, Defendants conceded that the treatment alleged by Plaintiff would constitute unreasonable use of force, if true. Thus, by finding that Officers Cashton and Cowley did not use unreasonable force, the jury concluded that Plaintiff was lying at least about (1) the events in the terminal at the time of arrest including punches, kicks, and knee strikes after Plaintiff was

handcuffed, (2) the beating in the jetway, including the incident in the luggage box and Officer Cashton's punches to Plaintiff's groin, and (3) the kidney punches delivered after the officers threw Plaintiff over the hood of the police vehicle.  Nevertheless, the jury chose to believe Plaintiff's story regarding Officer Engle's punch to Plaintiff's head, Officer Engle squeezing Plaintiff's testicles in the car, or both.  This determination was unreasonable. Plaintiff supported his version of events with his own testimony.  However, Plaintiff's version of events was squarely refuted by the three Defendants, Officer Prator, and at least three Southwest employees.  Accordingly, the jury found that Plaintiff had fabricated large parts of his story concerning the events on the plane, in the terminal, and in the jetway.  The jury could have based this conclusion on the testimony of all the police officers and airline employees at the scene, which strongly weighed against Plaintiff's testimony.  Once the officers escorted Plaintiff down the stairs from the jetway to the tarmac, however, the Southwest employees were no longer witnesses.

    With respect to the events on the tarmac before the officers transported Plaintiff to the substation, the only evidence on record are the testimonies of the Defendants, the Plaintiff, and Officer Prator.  As noted above, Plaintiff testified that the officers forced him to lie face down on the tarmac, and Officer Engle punched him in the back of the head while he was on the ground.  Plaintiff also testified that all three Defendants threw him over the hood of the police vehicle and delivered numerous punches to his back and kidneys.  Then, Plaintiff claimed that Officer Engle squeezed his testicles while he was seated in the back of the police vehicle.  Defendants, of course, deny all of Plaintiff's allegations.  In addition to Plaintiff and Defendants, however, Officer Prator also testified as to the events that occurred on the

tarmac.  Officer Prator completely corroborated the Defendants' story.  Specifically, Officer Prator testified that (1) the officers never placed Plaintiff face down on the tarmac, (2) no officer ever hit Plaintiff in the back of the head, and (3) no officer squeezed Plaintiff's testicles at any time.

The jury inexplicably found that Defendants and Officer Prator were truthful about not throwing Plaintiff over the hood of the car and beating him, but were untruthful regarding placing Plaintiff face down on the tarmac and punching him in the head and/or squeezing his testicles in the car.  The evidence on record does not provide any reasonable basis for which the jury could reach this inconsistent conclusion.  The jury could not reasonably conclude that Officer Engle punched Plaintiff in the back of the head, or that Officer Engle squeezed Plaintiff's testicles.

a.      Officer Engle's Alleged Punch

No reasonable jury could conclude that Officer Engle punched Plaintiff in the back of the head as alleged.  First, Plaintiff testified that the officers forced him to lie face down on the tarmac.  However, all three Defendants as well as Officer Prator testified that Plaintiff was standing the entire time he was outside on the tarmac.  Furthermore, the evidence on record establishes that the tarmac is extremely dirty and oily.  In the pictures taken later at the substation, however, Plaintiff's light-colored shirt shows no signs of dirt or grime.

Second, Plaintiff testified that Officer Engle punched him in the back of the head while Plaintiff lay face down on the tarmac.  Plaintiff claimed at trial that Officer Engle lifted up Plaintiff's head, showed him his injuries on his hand, and then punched Plaintiff in the back of the head.  Again, everyone else at the scene completely refutes Plaintiff's story.  The

only other relevant evidence presented at trial were photographs of Officer Engle's hands, which showed bruises and abrasions on the knuckles.  At trial, Plaintiff implied that these abrasions could have been the result of Officer Engle's punch to Plaintiff's head.  However, the jury could not have reasonably determined that the abrasions on Officer Engle's knuckles proved that he punched Plaintiff in the back of the head.  The jury's verdict exonerated all three Defendants of the allegations of unreasonable force in the jetway.  The jury did not believe Plaintiff's story about the luggage-sizer box or the beatings in the jetway.  In addition, the uncontroverted evidence establishes Officer Cashton suffered very serious shoulder and arm injuries while in the jetway.  If the jury discounted Plaintiff's story of the events in the jetway, it also concluded that Plaintiff acted violently in the jetway, causing Officer Cashton's injuries.  Officer Cashton suffered serious injuries in the jetway that night, and since the jury did not find Officer Cashton liable, they must have determined that he did not injure himself punching Plaintiff in the groin, but rather received the injuries as a result of Plaintiff's violent behavior in the jetway.

Accepting this account of Plaintiff's behavior in the jetway, coupled with the testimony of all three Defendants and Officer Prator, makes it unreasonable for the jury to determine that Officer Engle, who was trying to control Plaintiff in the jetway, did not suffer his hand injuries at that time, but rather suffered the injuries as a result of punching Plaintiff in the head on the tarmac.  To conclude that Officer Engle suffered hand injuries from punching Plaintiff on the tarmac is to go against the clear weight of the evidence.  Furthermore, there is no evidence of any trauma to Plaintiff's head in the photographs taken at the police substation.  The overwhelming weight of the evidence, as well as consistency

within the jury's own verdict, dictates that a reasonable jury could not have determined that Officer Engle punched Plaintiff in the back of the head while Plaintiff lay face down on the tarmac.

b.      Alleged Squeezing of Plaintiff's Testicles

No reasonable jury could find that Officer Engle squeezed Plaintiff's testicles as alleged. Plaintiff alleged that Officer Engle, while standing outside the driver's door, reached between the front seats and squeezed Plaintiff's testicles while Plaintiff was seated in the middle back seat of the police vehicle. No reasonable jury could have reached this conclusion. The uncontroverted evidence is that the officers transported Plaintiff in a Ford Excursion SUV police vehicle that night. In addition, there was a mounted mobile computer terminal between the two front seats. Accordingly, it would have been physically impossible for someone of Officer Engle's short stature to reach through the vehicle and grab Plaintiff's testicles as alleged. Furthermore, Plaintiff testified that he attempted to protect himself during the previous alleged beatings, yet he claimed that he was unable to take any measures to protect his groin in this instance, such as closing his legs. All three Defendants as well as Officer Prator testified that no officer squeezed Plaintiff's testicles. Photographs taken later at the substation show that Plaintiff was able to sit with his legs together.

Finally, the evidence on record demonstrates that Plaintiff could not conclusively identify which officer (if any) squeezed his testicles in the vehicle. On direct examination at trial, Plaintiff stated that Officer Engle reached through the seats and squeezed his testicles. However, on cross examination Defendants established that Plaintiff testified during his deposition that he was not sure whether it was Officer Engle or Officer Cowley. Based on

the weight of the evidence to the contrary, a reasonable jury could not find that Officer Engle squeezed Plaintiff's testicles as alleged.

Because no reasonable jury could conclude that Officer Engle punched Plaintiff in the head or squeezed his testicles as alleged, Defendant Officer Engle is entitled to Judgment as a Matter of Law on the issue of unreasonable use of force.

c.     Application of <u>Graham</u>

Even if the Court assumes that Officer Engle did in fact punch Plaintiff in the head and/or squeeze his groin as alleged, however, there is still insufficient evidence to establish a constitutional violation.  The Supreme Court of the United States cautioned against applying the "20/20 vision of hindsight" against police officers in this context.  <u>Graham v. Connor</u>, 490 U.S. 386, 393 (1989).  The reasonableness of an officer's use of force must be judged from the perspective of the officer on the scene.  <u>Id.</u> at 396.  Several factors are relevant to determining whether a particular use of force is constitutionally unreasonable.  Among those factors are "whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest."  <u>Id.</u>  Increased force is justified if the officer reasonably believes that the suspect will fight back.  <u>See</u> <u>Saucier v. Katz</u>, 533 U.S. 194, 205 (2001).  Therefore, the inquiry as to constitutional reasonableness is whether the totality of the circumstances justify the level of force used in the seizure.  <u>See</u> <u>Curnow v. Ridgecrest Police</u>, 952 F.2d 321, 325 (9th Cir. 1991).

The evidence presented at trial demonstrated that Plaintiff posed an immediate threat to the officers and others by fighting back and resisting arrest.  The jury accepted the Defendants' account of the events in question, at least until the officers escorted Plaintiff

Page 14 of  28

down the stairs to the tarmac.  Otherwise, the jury would have found the other two Defendants liable as well.  Accordingly, the jury must have drawn the only possible reasonable conclusion from the evidence on record, namely that Plaintiff acted violently, resisted arrest, and posed a threat to those around him.  The testimony at trial established that (1) Plaintiff was yelling and using profanity directed at the Southwest employees, (2) Plaintiff resisted arrest in the terminal by punching and head-butting Officer Cowley as well as trying to hold his arms under his body and escape the control of the officers so they could not handcuff him, (3) while in the jetway, Plaintiff acted violently at least by attempting to escape Officer Cashton's control.  Plaintiff's violent resistance continued even after he was secured by handcuffs behind his back.  In fact, that is when Officer Cashton suffered such severe injuries from Plaintiff's resistance, injuries which resulted in separation of his chest muscle from the shoulder and which required subsequent surgery.

Certainly, this evidence demonstrates that the officers had reason to believe that Plaintiff would continue to fight back on the tarmac and in the vehicle.  Plaintiff was much larger than the officers, and he had already caused very serious shoulder injuries to Officer Cashton even though Plaintiff was handcuffed at the time.  In this situation, police officers are entitled to use a higher level of force to subdue the suspect because he poses such a risk of continuing resistance and retaliation.  See, e.g., Saucier, 533 U.S. at 205.  Even if the Court assumes that Officer Engle did in fact punch Plaintiff and squeeze his testicles as alleged, those actions were constitutionally reasonable given Plaintiff's violent behavior and continuous resistance.  They served to maintain discipline and control over Plaintiff so that the officers could transport him to the substation.  Plaintiff himself testified that Officer

Engle's actions were quick, and there is no evidence that they caused Plaintiff any lasting, serious injury.[1]  Despite Plaintiff's violent resistance, the officers were able to control and transport Plaintiff without having to resort to the more dangerous use of a choke hold, batons, stun-guns, mace, or any other authorized weapons. Although Officer Engle's actions were more extreme than usual, they efficiently ensured the safety of Plaintiff and the officers. Such measures were reasonably necessary to guarantee that Plaintiff would not erupt with uncontrollable violence again.  Therefore, although the Court does not believe that a reasonable jury could conclude that Officer Engle punched Plaintiff or squeezed his testicles, given the evidence presented at trial, those actions would have been constitutionally reasonable within the bounds of the Fourth Amendment in this case.  See Saucier, 533 U.S. at 205; Graham, 490 U.S. at 396.  The Court thus concludes that Defendant Officer Engle is entitled to Judgment as a Matter of Law on these grounds.

## C.    Qualified Immunity

Defendants raised the legal question of qualified immunity before the case went to the jury.  The Court declined to address the issue until the jury rendered its verdict because qualified immunity would have been moot if the jury found in favor of the Defendants on the Fourth Amendment issue.  Because the jury found that Officer Engle acted unreasonably under the Fourth Amendment, the Court must now consider whether Officer Engle is protected by qualified immunity.  As will be shown below, even if the Court accepts the jury

---

[1] Plaintiff did not present any evidence at trial that the alleged punch caused any injury.  The injuries he allegedly suffered to his testicles are discussed below in Section II.B.

1  verdict with respect to Officer Engle's unreasonable use of force, Officer Engle is still

2  entitled to Judgment as a Matter of Law because he is protected by qualified immunity.

3            1.    Qualified Immunity Standard

4        The doctrine of qualified immunity is applicable to claims against police officers for

5  unreasonable use of force. <u>See, generally</u>, <u>Saucier</u>, 533 U.S. 194.  The Supreme Court of the

6  United States held that the qualified immunity inquiry is independent of the Fourth

7  Amendment reasonableness inquiry. <u>Id.</u> at 197.  Accordingly, even if a defendant police

8  officer used unreasonable force in making an arrest, he might still be protected by qualified

9  immunity as a matter of law. <u>Id.</u>  There are two steps in the qualified immunity analysis.

10  First, the court must determine whether "the facts alleged show the officer's conduct violated

11  a constitutional right." <u>Id.</u> at 201.  Second, if there is a constitutional violation, the court

12  

13  must determine "whether the right was clearly established." <u>Id.</u> at 201.

14                      a.    <u>Saucier</u> Step One

15        The first step in the qualified immunity analysis is to determine whether "the facts

16  alleged show the officer's conduct violated a constitutional right." <u>Saucier</u>, 533 U.S. at 201.

17  In this case, the jury found that Defendant Officer Engle did in fact violate Plaintiff's Fourth

18  Amendment rights because he used unreasonable force in making the arrest.  However, as

19  detailed above, this Court determines that the jury's verdict was unreasonable because the

20  facts in evidence do not demonstrate that Defendant Engle punched Plaintiff in the back of

21  the head or squeezed his testicles, and even if he did, those actions were reasonably necessary

22  within the bounds of the Fourth Amendment.  Thus, while the jury verdict indicates that the

23  

24  

25                             Page 17 of  28

jury would find that Plaintiff has satisfied the first inquiry in the qualified immunity analysis, the Court does not agree.

                  b.         <u>Saucier</u> Step Two

Even if this Court assumes that the jury correctly determined that Officer Engle violated Plaintiff's Fourth Amendment rights, however, Officer Engle is still entitled to qualified immunity under the second step of <u>Saucier</u>.  "[I]f a [constitutional] violation could be made out on a favorable view of the parties's submissions, the next, sequential step is to ask whether the right was clearly established." <u>Saucier</u>, 533 U.S. at 201. The Supreme Court has stated that "it is vital to note" that this second step "must be undertaken <u>in light of the specific context of the case, not as a broad general proposition.</u>" <u>Id.</u> (emphasis added). Indeed, the Supreme Court stated that the test for "determining whether a right is clearly established is whether it would be clear to a <u>reasonable</u> officer that his conduct was unlawful <u>in the situation he confronted.</u>" <u>Id.</u> at 202 (emphasis added).  The Supreme Court held that police officers are entitled to deference in cases of alleged excessive use of force:

> The deference owed officers facing suits for alleged excessive force is not different in some qualitative respect from the probable-cause inquiry in *Anderson* [*v. Creighton*, 483 U.S. 635 (1987)]. Officers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause or exigent circumstances, for example, and in those situations courts will not hold that they have violated the Constitution. Yet, even if a court were to hold that the officer violated the Fourth Amendment by conducting an unreasonable, warrantless search, *Anderson* still operates to grant officers immunity for reasonable mistakes as to the legality of their actions. The same analysis is applicable in excessive force cases, where in addition to the deference officers receive on the underlying constitutional claim, qualified immunity can apply in the event the mistaken belief was reasonable.

Id. at 206.  Accordingly, under <u>Saucier</u>, an officer is entitled to qualified immunity if the official has a "'mistaken understanding as to whether a particular amount of force is legal in those circumstances'" so long as the mistake is reasonable. <u>Jeffers v. Gomez</u>, 267 F.3d 895, 909 (9th Cir. 2001) (quoting <u>Saucier</u>, 533 U.S. at 205).  Qualified immunity is applicable if the officer makes a reasonable mistake of fact, or a reasonable mistake of law.  <u>See</u> <u>Saucier</u>, 533 U.S. at 205–06.  In order for an officer to make an unreasonable mistake of law, the applicable law must "put the officer on notice that his conduct would be clearly unlawful" given the circumstances of the case.  <u>Saucier</u>, 533 U.S. at 202.

Officer Engle is protected by qualified immunity because any mistake of fact that he made was reasonable given the circumstances of Plaintiff's arrest.  As detailed above in Section I.B.2.c., Plaintiff provided continuous violent resistance to Defendants' attempts to arrest him.  He punched and head-butted one officer, and caused severe shoulder and arm injuries to another.  Plaintiff violently resisted arrest in the terminal, then calmed down as the officers escorted him into the jetway.  Then, he erupted with violence again in the jetway. After the officers again gained control over him, they escorted Plaintiff down the stairs.  At that time, Plaintiff again tried to resist by wedging his feet between the stairs so the officers could not escort him to the bottom.  Under these circumstances, Officer Engle reasonably believed that Plaintiff would again resist arrest on the tarmac and in the vehicle. Accordingly, Officer Engle took reasonably extreme measures to ensure Plaintiff's compliance.  If Officer Engle was mistaken in his belief that Plaintiff intended to continue his resistance on the tarmac and in the vehicle, the mistake was reasonable given the circumstances of this case, and thus qualified immunity protects Officer Engle from suit.

Although the jury determined that Officer Engle violated Plaintiff's constitutional rights, Officer Engle is still entitled to immunity from suit because he did not commit an unreasonable mistake that violated well established law.  While this Court recognizes that throwing a punch or squeezing a suspect's testicles will often constitute an unreasonable use of force (indeed the jury so found in this case), such actions in these circumstances do not violate well established law (an issue of law that never went to the jury).  The proper inquiry in this case is whether Officer Engle reasonably thought that delivering a punch to Plaintiff's head and squeezing his testicles did not violate Plaintiff's Fourth Amendment rights.

Officer Engle is entitled to immunity because there is no well established law indicating that a police officer can never squeeze a violent suspect's testicles in order to subdue him in a situation like the one giving rise to this case.  Well established law does indicate that an officer cannot assert qualified immunity after grabbing a suspect's testicles during a routine pat-down search or frisk.  See, e.g., Price v. Kramer, 200 F.3d 1237, 1249 (9th Cir. 2000).  However, as has been detailed above, this case was nothing like a routine pat-down search.  The officers had grounds to arrest Plaintiff, and he resisted, behaved violently, fought back, and caused severe injuries to the officers escorting him.  This Court cannot determine that there is well established law prohibiting officers from ever squeezing a violent suspect's testicles to subdue him.  On the contrary, as discussed above, both Graham and Saucier explicitly state that an officer is justified in using more force than normal for an arrest in order to subdue a suspect if circumstances so require.  The law did not put Officer Engle on notice that he could not squeeze a suspect's testicles in a situation like the one in question.  Plaintiff was much larger than the officers, he had hit and head-butted one officer

during the arrest, he had ripped another officer's shoulder tendon from the bone and tore his rotator cuff. As a matter of law, Officer Engle could reasonably determine that squeezing Plaintiff's testicles was a necessary and constitutionally acceptable course of action in this case; it was certainly preferable to the alternatives, namely the use of a choke hold, stun-guns, mace, or batons. Existing law does not indicate otherwise. If Officer Engle violated Plaintiff's Fourth Amendment rights, his mistake was reasonable as a matter of law because he did not violate any well established law that squeezing a violent suspect's testicles is never permitted during an arrest.

Officer Engle's alleged punch to the back of Plaintiff's head does not preclude qualified immunity because Officer Engle's actions did not violate well established law on that issue either. A reasonable officer in Officer Engle's situation would have believed that punching Plaintiff in the back of the head was not an excessive use of force in violation of the Fourth Amendment. Various strikes are acceptable uses of force if the suspect turns violent. Again, Graham and Saucier hold that an officer is permitted to use the requisite amount of force necessary to subdue the suspect and ensure the safety of everyone involved. Plaintiff's violent and continuous resistance throughout his arrest indicates that Officer Engle could reasonably conclude that a punch was constitutionally permitted as a matter of law. This Court is unable to find "any case demonstrating a clearly established rule prohibiting the officer from acting as he did." Saucier, 533 U.S. at 209. If Officer Engle violated Plaintiff's constitutional rights by punching him in the back of the head, his mistake was reasonable as a matter of law. The law did not put Officer Engle on notice that he could not maintain control over a violent suspect such as Plaintiff by punching him in the back of the head. Therefore,

Officer Engle's actions were reasonable as a matter of law, and thus he is entitled to immunity from suit under Saucier.

Because qualified immunity protects Officer Engle, he is entitled to the entry of Judgment as a Matter of Law in his favor in this case, even though the jury determined that he violated Plaintiff's Fourth Amendment rights.

## II.   **Conditional Ruling on Motion for New Trial**

Although Officer Engle is entitled to Judgment as a Matter of Law, the Federal Rules of Civil Procedure also require the Court to conditionally rule on the Motion for New Trial. In addition to the unreasonable conclusion reached by the jury and qualified immunity as discussed above, the Court also finds that Officer Engle is entitled to a new trial because the jury awarded excessive, speculative damages unsupported by the evidence on record.

### A.   **Legal Standard**

Rule 50(c)(1) of the Federal Rules of Civil Procedure requires a court to conditionally rule on a motion for new trial at the same time it grants a motion for judgment as a matter of law.  If a court grants a motion for judgment as a matter of law:

> the court shall also rule on the motion for a new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed, and shall specify the grounds for granting or denying the motion for the new trial. If the motion for a new trial is thus conditionally granted, the order thereon does not affect the finality of the judgment. In case the motion for a new trial has been conditionally granted and the judgment is reversed on appeal, the new trial shall proceed unless the appellate court has otherwise ordered.

Fed. R. Civ. P. 50(c)(1).

Following a jury verdict, the court may grant a new trial "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a).  A new trial is appropriate when a jury's damages award is contrary to the clear weight of the evidence, or when the court must step in to avoid a miscarriage of justice.  See Passantino v. Johnson & Johnson Consumer Products, Inc., 212 F.3d 493, 510 (9th Cir. 2000).  The court may also grant a new trial "[i]f, giving full respect to the jury's findings, the judge on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  Landes Constr. Co., Inc. v. Royal Bank of Canada, 833 F.2d 1365, 1371–72 (9th Cir. 1987).  Because the existence of substantial evidence does not prevent the court from granting a new trial if the verdict is against the clear weight of the evidence, and because the court need not view the evidence in the light most favorable to the prevailing party, the standard for granting a motion for new trial is less stringent than granting a motion for judgment as a matter of law.  See Id. at 1371.

### B.    Unreasonable Jury Verdict and Qualified Immunity

Officer Engle is entitled to a new trial because the jury reached an unreasonable conclusion based on the evidence presented at trial, and the doctrine of qualified immunity, which was not presented to the jury, protects Officer Engle from suit.  These issues were discussed above in conjunction with the Motion for Judgment as a Matter of Law.  The Court determines that Officer Engle is entitled to a new trial based on these issues for the same reasons he is entitled to Judgment as a Matter of Law.

A new trial is warranted in order to avoid an unjust and inequitable result.  See Passantino, 212 F.3d at 510.  The jury disbelieved almost all of Plaintiff's version of the

events.  Officer Cashton suffered the most severe injuries of anyone involved, and the jury's verdict indicates that they believed that Plaintiff caused those injuries.  Based on the evidence on record as well as the jury's verdict, it is clear that Plaintiff was the aggressor in this case. Given Plaintiff's violent resistance, even assuming that Officer Engle punched Plaintiff and grabbed his testicles, the Court finds that a damages award would be unjust.  Furthermore, it is inequitable to reward Plaintiff when the verdict demonstrates that the jury thought that Plaintiff fabricated most of his account of the events surrounding his arrest.  Therefore, notwithstanding that the Court fully respects the jury's verdict, the Court is "left with the definite and firm conviction that a mistake has been committed," and thus a new trial is necessary.  Landes Constr., 833 F.2d at 1372.

### C.    Speculative Damages Award

Officer Engle is also entitled to a new trial because the jury awarded speculative, excessive damages unsupported by the evidence.  The jury awarded Plaintiff $175,000 in compensatory damages and $5,000 in punitive damages.  This amount is unreasonably excessive based on the evidence on record, and thus constitutes a miscarriage of justice.  At trial, Plaintiff presented three types of evidence from which the jury could calculate the amount of damages: (1) medical bills, (2) Plaintiff's physical pain, and (3) the fact that Plaintiff lost his job.

First, Plaintiff presented evidence in the form of medical bills.  Plaintiff testified that he visited doctors shortly after the incident.  As presented at trial, Plaintiff's total medical bills amounted to less than $5,000, mostly for diagnostic tests as opposed to treatment. Second, Plaintiff presented evidence to show that he suffered physical pain in his testicles

following the incident.  Plaintiff's doctor testified that Plaintiff had injuries to his testicles and that he complained of pain.  At most, however, the evidence at trial indicated that Plaintiff had pain and bruising in his testicles for two weeks following the arrest.  There is no evidence on record to support a finding that Plaintiff suffered any discomfort beyond that time.  Furthermore, although Plaintiff testified that he was experiencing pain in his testicles in the days following the incident, his doctor testified that Plaintiff never returned for requested follow-up visits.  Third, Plaintiff testified at trial that he worked for MGM Grand at the time of the incident, and was earning over $100,000 per year.  He also testified that he lost his job shortly after the incident and that he has been unable to secure similar employment since.  The jury may have relied on this testimony as evidence of lost wages, and awarded Plaintiff accordingly.  However, at trial the Court explicitly instructed the jury and the parties that Plaintiff's testimony was insufficient to provide the basis for a claim of lost wages.  Plaintiff never presented any evidence linking his job termination to the incident in question.  In fact, evidence on record shows that Plaintiff's employer terminated Plaintiff's employment as a result of cutbacks which occurred following the economic downturn in Las Vegas associated with the events of September 11, 2001.  Because Plaintiff never provided any evidence to support the allegation that he was fired as a result of the events of July 9, 2001, the Court instructed the jury that they could not use lost wages to calculate a damages award.

Therefore, the only evidence presented at trial from which the jury could appropriately calculate damages was medical bills and two weeks of pain and discomfort.  As noted above, the medical bills amounted to less than $5,000.  As to the pain in his testicles,

Plaintiff did not think it necessary to make return visits to the doctor, and there is no evidence that his injuries prevented him from performing any ordinary tasks, or that he suffered even minimal discomfort after two weeks.  Nevertheless, the jury awarded Plaintiff $175,000 in compensatory damages and $5,000 in punitive damages.  The jury awarded Plaintiff more than 35 times the amount needed to compensate him for his medical bills, most of which were diagnostic.

The evidence on record does not reasonably support such a high damages calculation. In actions under 42 U.S.C. § 1983, the jury must award damages that are "designed to compensate injuries."  Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 309 (1986) (quotations omitted) (emphasis in original).  "[D]amages in § 1983 actions are not to be assessed on the basis of the abstract 'value' or 'importance' of the infringed constitutional right."  Sloman v. Tadlock, 21 F.3d 1462, 1472 (9th Cir. 1994).  The limited evidence of Plaintiff's minimal injuries cannot support such a wide differential between the cost of Plaintiff's medical treatment and the ultimate award.  Because the evidence on record does not reasonably support the damages award, the Court concludes that the jury awarded damages based on speculation.  Accordingly, this Court finds that a new trial is necessary because the damages award went against the clear weight of the evidence presented at trial and the Court must step in to prevent a miscarriage of justice in this regard.  See Johnson & Johnson, 212 F.3d at 510.

Therefore, the Court conditionally finds that Officer Engle is entitled to a new trial because the jury reached an unreasonable verdict, he is protected by the doctrine of qualified

immunity, and the damages award was speculative, excessive, and against the clear weight of the evidence.

### III.   Motions for Attorney's Fees

Both parties have filed motions for attorney's fees.  Plaintiff contends that he is entitled to fees and costs because he received a jury verdict in his favor.  Defendants argue that they are entitled to fees and costs because they prevailed on several causes of action before trial, and on the claims against Officers Cowley and Cashton at trial.  Because the Court is now granting Defendants' Motion for Judgment as a Matter of Law (#124), judgment will enter accordingly, and Plaintiff is no longer the prevailing party, and thus is not entitled to attorney's fees.  See 42 U.S.C. § 1988(b) ("In any action or proceeding to enforce a provision of sections . . . 1983 . . . of this title . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee.").  Accordingly, the Court denies as moot Plaintiff's Motion for Attorney's Fees (#127).

Defendants have filed a Counter-Motion for Attorney's Fees (#135) in which they argue that they are the prevailing party on several claims in this case, and thus are entitled to attorney's fees.  However, as Plaintiff notes in his Motion to Strike Defendants' Motion for Attorney's Fees (#133), Defendants' request for attorney's fees is untimely.  The Court originally set June 26, 2006, as the deadline to submit post-trial motions, including motions for attorney's fees.  Pursuant to a stipulation between the parties, the Court moved that deadline to July 3, 2006.  Defendants filed their Counter-Motion for Attorney's Fees (#135) on July 13, 2006.  Accordingly, the Court denies Defendants' Counter-Motion for Attorney's

1  Fees (#135) as untimely and grants Plaintiff's Motion to Strike Defendants' Motion for

2  Attorney's Fees (#133).[2]

3  **CONCLUSION**

4  IT IS HEREBY ORDERED that Defendants' Motion for Judgment as a Matter of

5  Law; in the Alternative, Motion for a New Trial (#124) is *granted*.

6  IT IS ALSO HEREBY ORDERED that Plaintiff's Motion for Attorney's Fees (#127)

7  is *denied* as moot.

8  IT IS ALSO HEREBY ORDERED that Plaintiff's Motion to Strike Defendants'

9  Motion for Attorney's Fees (#133) is *granted.*

10

11  IT IS ALSO HEREBY ORDERED that Defendants' Counter-Motion for Attorney's

12  Fees (#135) is *denied*.

13  Judgment shall enter accordingly.

14

15  DATED:_____ August 11, 2006._____

16

17

18

19

20

21  ROBERT C. JONES
    UNITED STATES DISTRICT JUDGE

22

23  [2]Although the Court grants Plaintiff's Motion to Strike Defendants' Motion for Attorney's Fees
    (#133), the Court determines that sanctions against Defendants are inappropriate.  Plaintiff shall
24  bear his own costs.

25  Page 28 of  28